## HOUGHTON *v.* ROBERTS.

1. APPEAL AND ERROR—NONJURY CASE—FINDINGS OF FACT—PREPON-
DERANCE OF EVIDENCE.

The Supreme Court will not substitute its judgment for that of a
trial court in a nonjury case on a question of fact unless the
evidence clearly preponderates in the opposite direction, since
the trial court had an opportunity to see the witnesses testify
and observe their demeanor in the courtroom and was in a
far better position to determine which witness was telling the
truth.

2. CONTRACTS — FINDING OF CANCELLATION — DEMAND — TIME —
EVIDENCE.

Finding of trial court in nonjury case that contract for sale of
stock to plaintiff for breach of which he sought damages from
defendant had been canceled *held,* not against preponderance
of the evidence including subsequent transactions between
plaintiff and defendant and others not in accordance with the
contract sued on and lapse of over 5 years without demand for
compliance.

Appeal from St. Joseph; Andrews (Mark S.), J.
Submitted June 2, 1959. (Docket No. 2, Calendar
No. 47,919.) Decided October 12, 1959.

Assumpsit by Elmer Houghton against William
F. Roberts for value of corporate stock claimed by
reason of liquidation and purchase arrangement.
Judgment for defendant. Plaintiff appeals. Af-
firmed.

*Dresser & Dresser,* for plaintiff.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 896.
[2] 9 Am Jur, Cancellation of Instruments § 63.

*Megargle & Megargle* and *Roy H. Hagerman,* for defendant.

KAVANAGH, J. Plaintiff brought this action in assumpsit claiming damages for breach by defendant of a written contract between plaintiff, defendant, and 2 other parties.

The alleged breach consisted of the refusal of defendant in June of 1956 to sell to plaintiff certain stock in accordance with a written contract entered into on December 3, 1948, and attached to plaintiff's declaration as exhibit A.

Defendant answered and admitted the execution of the agreement, but denied that plaintiff was entitled to recover under the contract for the following reasons: (1) Plaintiff agreed to and did cancel the December 3, 1948, contract. (2) The agreement provided for a sale in the event plaintiff and Bruce Kaufman were able to complete a dissolution of K & L Tool & Die Company, on such dissolution obtain certain of the machinery, tools, and equipment in lieu of their stock in the K & L company, sell these to the Bronson Tool & Die Company and take in payment therefor common stock of the Bronson Tool & Die Company. (3) After the issuance of the common stock of Bronson Tool & Die Company to Kaufman and Houghton for the assets of K & L Tool & Die Company, defendant William F. Roberts agreed to sell to said Kaufman and Houghton such additional shares of the common stock of Bronson Tool & Die Company which he owned so that the total holdings of Kaufman and Houghton would each be 25% of the outstanding capital stock of Bronson Tool & Die Company, except the stock held by T. E. St. Clair. This additional stock was to be sold to Kaufman and Houghton on the basis of 80¢ per share and was to be paid by the said Kaufman and Houghton out of the dividends and/or bonus which

they in the future would receive from Bronson Tool & Die Company on all their stock. (4) The agreement was never performed by plaintiff Houghton and Kaufman. (5) The contract was altered and changed, both by action of the parties as officers of Bronson Tool & Die Company and as officers of K & L Tool & Die Company, and was particularly canceled and changed by a new agreement dated January 10, 1951. (6) Bronson Tool & Die Company has not paid and has never been in a position to pay any dividends or stock bonus. (7) Plaintiff is estopped now to claim rights under the December 3, 1948, contract because of its alterations and cancellations agreed to by plaintiff, and because of plaintiff's participation in the alleged new agreement from January 10, 1951, to May, 1956.

The case was tried by the trial judge without a jury. The court entered a judgment of no cause of action.

Plaintiff appeals and claims: (1) The judgment of the trial court was against the preponderance of the evidence when it held that the intent of the contract between the parties prevented plaintiff from suing on a breach of the contract at the time of this suit or any other time. (2) The court erred in holding that plaintiff did not have a separate cause of action against defendant for his failure to sell to plaintiff the stock, which plaintiff claims he was entitled to under the agreement of December 3, 1948. (3) The court erred in holding in effect that where an actual agreement to form a joint adventure is shown, one party is denied his rights under the agreement when another party attempts to abandon the adventure. (4) The court erred in holding that defendant, a party to the joint adventure, can enrich himself from the profits of the joint adventure at the expense of the plaintiff, another joint adventurer. (5) The court erred in answering 6 additional ques-

tions, which plaintiff claims are pertinent to a decision of this case.

The facts material to a proper understanding and decision of this case disclose that on the date of the written instrument, December 3, 1948, plaintiff, defendant, and one Kaufman owned all of the stock of K & L Tool & Die Company, and defendant and one St. Clair owned all of the issued stock of Bronson Tool & Die Company, both being Michigan corporations. Defendant owned the controlling interest in both corporations. Bronson had been performing work brought to it by K & L. Defendant, plaintiff, F. B. Roberts, defendant's son, and Bruce Kaufman executed the instrument that is the subject matter of this litigation, apparently intending to consolidate their forces and operations and carry on the tool and die business as Bronson Tool & Die Company under an arrangement whereby each of the 4 would eventually own 25% of the holdings of Bronson. The result was plaintiff's exhibit A, which reads as follows:

"Agreement, made this 3d day of December, 1948, by and between Bruce Kaufman, Elmer Houghton, F. B. Roberts, and W. F. Roberts, all of Bronson, Michigan, as follows:

"Whereas, W. F. Roberts, now is owner of 40,500 shares of the common stock of Bronson Tool & Die Co., and he desires to have associated with him in said business, Bruce Kaufman, Elmer Houghton, and F. B. Roberts, and the parties desire that an agreement be made whereby each of the 4 parties will own 25% of the common stock of the Bronson Tool & Die Co. now owned by W. F. Roberts, and each of them to eventually acquire 25% of the common stock now owned by T. E. St. Clair, and to so hold the common stock of Bronson Tool & Die Co. at all times, so that each of the 4 parties shall own 25% of the common stock of said corporation;

"Therefore, it is agreed as follows, to wit:

"1. That Bruce Kaufman, Elmer Houghton, and W. F. Roberts now own all of the common stock of K & L Tool & Die Co., which they have agreed to liquidate, and in the liquidation it is proposed that said Kaufman and Houghton will acquire certain of the machinery, tools and equipment of said company, which they are to sell to the Bronson Tool & Die Co. and take in payment therefor common stock of the said Bronson Tool & Die Co.

"2. W. F. Roberts agrees that after the issuance of the common stock of Bronson Tool & Die Co. to said Kaufman and Houghton, for the assets of the K & L Tool & Die Co., he will sell to the said Kaufman and Houghton such additional shares of the common stock of the Bronson Tool & Die Co. which he owns so that the total holdings of said Kaufman and Houghton shall each be 25% of the outstanding capital stock of the Bronson Tool & Die Co., except the stock held by the said T. E. St. Clair. This additional stock which W. F. Roberts agrees to sell to the said Kaufman and Houghton shall be sold to them on a basis of 80¢ per share, and shall be paid for by the said Kaufman and Houghton out of the dividends and/or bonus which they shall in the future receive from the Bronson Tool & Die Co. on all their stock. The stock shall be delivered by the said Roberts to the said Kaufman and Houghton when the same has been paid for in accordance with this agreement. The said Kaufman and Houghton shall have the right to vote the stock which the said Roberts has herein agreed to sell, while there is no default in the payment thereon.

"3. W. F. Roberts also agrees to see that there is sold, assigned or transferred to his son, F. B. Roberts, 25% of the common stock of the Bronson Tool & Die Co., which shall equal 25% of the outstanding capital stock except that of T. E. St. Clair.

"4. It is agreed by all 4 of the parties hereto that if and when the shares of stock now owned by T. E. St. Clair are purchased by them, or any of them,

said shares of stock shall be distributed and owned equally by the 4 parties hereto.

"5. This agreement is to be so construed that the 4 parties hereto shall become each a 1/4 owner of the Bronson Tool & Die Co., when the terms of this agreement have been carried out, as that is the intention of the parties, that they will each own 1/4 of said business.

"6. It is agreed that the parties hereto will do all things necessary to carry this agreement into effect, including the joining in and voting on any resolutions as stockholders or directors of the companies involved, and that they will execute all instruments and papers necessary to carry this agreement into effect.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

"W. F. ROBERTS
"ELMER HOUGHTON
"BRUCE KAUFMAN
"F. B. ROBERTS."

On December 9, 1949, the directors and stockholders of K & L took formal action and authorized the sale of its assets at book value to Bronson, for which said stockholders were to receive stock in Bronson at par according to their holdings, and K & L was to be dissolved.

On April 1, 1950, at a meeting of Bronson stockholders, it was voted to buy the assets of K & L at the book value of $30,000. It is to be noted that this arrangement was not in accordance with the written contract sued upon and constituted an alteration of said contract.

On April 15, 1950, plaintiff and Kaufman assigned their stock in K & L to Bronson and each received 6,000 shares of Bronson stock. On the same date, St. Clair assigned all of his stock to defendant's wife, and the 6,000 shares Kaufman and plaintiff

each received came from this stock, not from Bronson Tool & Die Company. Plaintiff still owns his shares, and defendant acquired Kaufman's stock on December 20, 1951.

Plaintiff and Kaufman became employees of Bronson about December 1, 1948, and plaintiff continued in such employment until June 11, 1956, when he left because defendant would not sell him the stock in Bronson, to which he claims he is entitled under the 1948 instrument. It appears that Kaufman left the employ of Bronson about the time he assigned his stock to the defendant in 1951, but returned subsequently.

According to plaintiff's exhibit 5, between March 31, 1949, and October 31, 1956, Bronson increased its total assets from $130,339.58 to $483,653.34. However, it is undisputed that the company was never in a position to pay a dividend or bonus during that period of time.

It is the position of plaintiff that the 1948 instrument should be construed to bind defendant to sell to plaintiff at 80¢ per share sufficient of the shares then owned by defendant and of the St. Clair shares, which plaintiff claims defendant owns, so that, with the 6,000 shares plaintiff acquired for his interest in K & L, he would own 25% of the issued shares in Bronson; although plaintiff contends he was not required to pay more for the St. Clair stock than defendant paid for it.

One of defendant's claims is that the sale of stock by defendant was conditional upon the payment of a dividend and/or bonus by Bronson.

The lower court held that in reading the 1948 contract it is apparent that it was the intention of the parties, as disclosed by the language of paragraph 1, that plaintiff and Kaufman were to receive Bronson stock for their interest as stockholders in K & L. To that end it was stated that plaintiff, defendant

and Kaufman, constituting all of the stockholders of K & L, were to liquidate this company, and in the liquidation it was contemplated that Kaufman and plaintiff would acquire certain machinery, tools, and equipment of K & L which they were to sell to Bronson and take Bronson stock in payment.

The court found as a matter of fact that the original plan was changed by action of the stockholders and directors of K & L on December 9, 1949, when it was voted to sell the assets of K & L at book value to Bronson and receive in exchange stock in Bronson at par and distribute the same to K & L stockholders. The court also found as a matter of fact that although the stockholders of Bronson voted to buy the assets of K & L at book value this was not done, and instead defendant Roberts caused to be tranferred from the St. Clair stock 6,000 shares to Kaufman and 6,000 shares to plaintiff, which they accepted for the 1/5th interest each had in K & L.

The court further found that plaintiff could not complain as to the provisions of paragraph 1 of the December 3, 1948, contract because he had received the 6,000 shares of Bronson stock for his interest in K & L.

The circuit court found as a matter of fact that paragraph 2 of the severable contract of December 3, 1948, specified the manner in which Kaufman and plaintiff could acquire additional stock in Bronson. It states that defendant will sell to the said Kaufman and Houghton such additional shares of Bronson Tool & Die Company which he owns so that the total holdings of Kaufman and Houghton would each equal 25% of Bronson stock, except St. Clair holdings, said additional shares to be sold to them on a basis of 80¢ per share, "and shall be paid for by the said Kaufman and Houghton out of the dividends and/or bonus which they shall in the future receive

from the Bronson Tool & Die Co. on all their stock. The stock shall be delivered by the said Roberts to the said Kaufman and Houghton when the same has been paid for in accordance with this agreement."

The court found as a matter of fact that the instrument disclosed an intention by the parties to impose 2 conditions concerning the sale of Bronson stock by defendant. The first condition was that such sale was to be made to both Kaufman and plaintiff concurrently. The court found as a matter of fact that the language of the instrument does not disclose an intention that defendant is bound to sell to plaintiff the shares which he demanded since the agreement to sell was to both Kaufman and plaintiff concurrently, and at the time of the demand in May and June of 1956 no agreement to sell to plaintiff alone existed.

The court further held, as a second condition, that the language of the instrument does not disclose an intention to bind Kaufman and plaintiff to buy the stock irrespective of a dividend and/or bonus from Bronson, and does not disclose an intention to bind defendant to sell to plaintiff and Kaufman for cash. It was the intention of the parties that defendant would be bound to sell only if Bronson paid or should have paid a dividend and/or bonus. The court then found as a matter of fact that Bronson was never in a financial position to justify a dividend and/or bonus.

This is a law action in which the judge tried the case without a jury. His opinion discloses certain findings of fact supported by competent evidence. It has been repeatedly stated that this Court will not substitute its judgment in such a case unless the evidence clearly preponderates in the opposite direction. *Patton* v. *Oakman*, 298 Mich 672; *Mallory* v. *Pitcairn*, 307 Mich 40; *Rose* v. *Paint Manufacturers, Inc.*, 311

Mich 428; *Moller* v. *Sirhal,* 342 Mich 391; *Zarzecki* v. *Hatch,* 347 Mich 138 (62 ALR2d 284).

We recognize that the court had an opportunity to see the witnesses testify, to observe their demeanor in the courtroom, and was in a far better position than is the appellate court to determine which one of the witnesses was telling the truth.

The record discloses testimony by the defendant that the plaintiff was present at the stockholders' meeting on January 10, 1951, and actually signed the minutes which contained a clause cancelling all previous contracts as to purchase of company stock. It was the testimony of plaintiff that this clause was not in the minutes at the time they were signed by him. There was testimony by witnesses that it was in the minutes, that it was understood by plaintiff, and that it was the subject of discussion for weeks prior to the meeting.

The trial court, sitting without a jury, determined the fact to be that the December 3, 1948, agreement was canceled.

The record discloses that plaintiff worked for Bronson from January 10, 1951, until May, 1956, without making any demand upon defendant for the stock. This would seem to reasonable people to indicate that he too believed the stock arrangement had been canceled. The fact that he had his salary increased many times by the incentive arrangement made at the January 10, 1951, meeting, and that he accepted it from then until May, 1956, might indicate to the trial court that he fully understood that the stock arrangement had been canceled. The court having so found from the instruments themselves, the record and testimony of the parties, we cannot say that such a finding was against the preponderance of the evidence.

It is apparent that if the stock arrangement was canceled January 10, 1951, then plaintiff had no right

of action for damages against defendant based upon the 1948 written agreement in May and June of 1956 when demand was made.

In view of this disposition of the main problem, the other arguments and contentions of plaintiff-appellant, which have been given serious consideration, need not be answered.

The judgment of no cause for action must be affirmed. Costs shall be taxed in favor of appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.